UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN MESSNER,

    Plaintiff,

v.                                    Case No. 14-CV-1272

PATRICK MURPHY and
CORINA LUTZ-DAUL,

    Defendants.

## ORDER

Stephen Messner, a Wisconsin state prisoner who is currently confined at Oshkosh Correctional Institution (Oshkosh), filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. Judge Rudolph T. Randa (to whom this case was assigned at the time) screened Messner's complaint pursuant to 28 U.S.C § 1915A(a) and allowed him to proceed with his claims that defendants Patrick Murphy and Corina Lutz-Daul were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. (ECF No. 7.)

The parties subsequently consented to have this court resolve this matter. (ECF Nos. 2, 9.) This case is now before the court on the defendants' motion for summary judgment. (ECF No. 17.)

## I. RELEVANT FACTS

The facts in this section are primarily taken from "Defendants' Replies to Plaintiff's Responses to Defendants' Proposed Findings of Fact." (ECF No. 26.) The facts are undisputed unless noted otherwise.

Murphy has been employed by the Wisconsin Department of Corrections (DOC) as a physician at Oshkosh since March 2007. (Id. at ¶ 2.) Lutz-Daul was employed by the DOC as a nurse clinician in the Oshkosh Health Services Unit (HSU) from June 4, 2012, until March 21, 2015. (*Id*. at ¶ 3.) Messner is suing the defendants for failing to treat his complaints of extreme stomach pain and nausea from October 2012 to September 2013. (*Id*. at ¶ 4.)

On October 11, 2012, Messner submitted a health services request (HSR) because he was experiencing abdominal pain. (*Id*. at ¶ 23.) The next day he was seen by nursing staff, whom he informed that his stomach hurt and that the pain increased when he pressed on it. (*Id*. at ¶ 23, 24.) He also stated that the pain had gotten progressively worse over the past two weeks and that it hurt more after eating a lot. (*Id*. at ¶ 24)

Murphy examined Messner that day. (*Id*. at ¶ 27.) Messner informed Murphy that the pain began in his right lower back and radiated to his right, mid-abdomen but that it was then located in his right middle to right lower abdomen. (*Id*. at ¶ 27.) Messner also stated that he felt pain when he moved but not when he sat still or laid down. (*Id*. at ¶ 28.) Messner indicated that he had some nausea but was not vomiting and that he had not had diarrhea or constipation. (*Id*. at ¶ 29.) Murphy noted that Messner was alert with no apparent distress; his lungs were clear; his abdomen was soft with positive bowel sounds; he had a tender right upper quadrant to right mid-abdomen (Messner recalls squirming in pain when Murphy pressed his abdomen), with no rebound or guarding. (*Id*. at ¶ 30.) Messner recalls telling Murphy that he had previously suffered from colitis, although Murphy does not recall Messner informing him of that diagnosis. (*Id*. at ¶ 33-34.)

Based on the exam, Murphy assessed a possible muscle strain and prescribed Tylenol as needed for the pain. (*Id*. at ¶ 31.) Murphy also directed Messner to contact HSU if the pain worsened. (*Id*. at ¶ 32.)

On October 26, 2012, Messner filed an HSR stating, "I saw Dr. Murphy for pain in back and side about (2) weeks ago – pain has not subsided and has gradually gotten worse. He recommended I put a slip in if no change for the better." (*Id*. at ¶ 36.) Messner was notified that he was scheduled to see Murphy. (*Id*. at ¶ 37.) On November 1, 2012, Messner submitted another HSR complaining that his pain was

3

increasing. (*Id*. at ¶ 39.) Murphy did not see Messner but instead prescribed acetaminophen three times a day as needed for one year. (*Id*. at ¶ 39.)

On December 24, 2012, Messner submitted another HSR, stating, "I saw Dr. Murphy for pain in side, stomach, and back a couple of months ago and was told <u>If</u> (sic) pain persists, or gets worst to contact him. I sent a request quite some time ago to see him again. I was told I was 'red tag' to see doctor and still have not seen him. What's up?" (*Id*. at ¶ 41.) Murphy reviewed Messner's records and scheduled Messner for a visit on December 28, 2012. (*Id*. at ¶ 43.)

Murphy later decided that Messner's condition was not in need of a follow-up as urgently as other patients, so he rescheduled Messner's appointment for January 17, 2013. (*Id*. at ¶ 43-44.) At the time Murphy was the only physician at Oshkosh and could see only six to twelve patients per day out of more than two thousand inmates. (*Id*. at ¶ 45.) (Murphy does not say how many patients requested to see him on a typical day, so the actual demand for his services is unclear.) Murphy would schedule patients in order of perceived need as determined by him and the nurses. (*Id*. at ¶ 45.) Murphy states that less urgent needs are eventually addressed but that there may be some delay. (*Id*.)

On January 3, 2013, nursing staff examined Messner for his complaints of continued abdominal pain and back pain. (*Id*. at ¶ 46.) Messner told the nurse that he was having right upper quadrant pain that radiated to his back and neck and that it felt

4

like his brain was sloshing in his head. (*Id*. at ¶ 47.) He said, "[T]here is something not right." (*Id*.) Messner also recalls specifically informing nurses of his abdominal pain. (*Id*. at ¶ 48.) The nursing staff reassured Messner and advised him to continue with his pain medication. (*Id*. at ¶ 49.) After reviewing the nursing appointment notes, Murphy decided that Messner's January 17 appointment could wait, so he cancelled the appointment. (*Id*. at ¶ 51-52.)

On March 26, 2013, Messner submitted another HSR, stating that he " . . . still [has] pain in lower stomach, side, and back. I found the source of my pain . . . not a muscle as Dr. Murphy thought. I have a fairly large growth on my right testis. Need to be seen ASAP." (*Id*. at ¶ 58.) Messner was seen the next day by the nursing staff. (*Id*. at ¶ 59.) Nursing staff notes indicate that Messner complained about pain on the right side of his scrotum, which was shooting through to his side and back, but Messner states that he also told the nurse that he was experiencing abdominal pain not related to the growth on his testicle. (*Id*. at ¶ 60.)

Nursing staff examined Messner's groin and referred him to a nurse practitioner, who noted that Messner presented with a painful extra scrotal mass and mild right-sided intra-abdominal pain with application of significant pressure to the area. (*Id*. at ¶ 64.) Messner states that he also informed the nurse practitioner of his abdominal pain but that she indicated he would have to discuss that with Murphy as it was unrelated to the mass on his testicles. (*Id*. at ¶ 66.)

Messner was seen again by nursing staff on April 16, 2013, for his complaints of pain, skin changes on his scrotum, and nausea. (*Id*. at ¶ 67.) Nursing staff contacted Murphy to discuss their findings and Murphy informed them that he would see Messner later that day. (*Id*. at ¶ 70.) Messner complained to Murphy of pain in his scrotum and abdomen and informed Murphy that he had had diarrhea off-and-on for the past two weeks with chronic nausea since October. (*Id*. at ¶ 73.)

On April 17, 2013, Murphy requested that Messner be scheduled for a colonoscopy. (*Id*. at ¶ 76.) The request was granted and one was scheduled with an outside provider for May 14, 2013. (*Id*. at ¶ 77.)

On May 24, 2013, the doctor at the outside provider sent a letter to Murphy indicating that, based on the results, which included inflammatory polyps and mild colitis, he recommended that Messner go to the gastrointestinal (GI) clinic to discuss symptoms of colitis and possible treatments needed. (*Id*. at ¶ 81.)

Murphy explains that ulcerative colitis is an inflammatory bowel disease that causes long-lasting inflammation and sores in a person's digestive tract and affects the innermost lining of a person's colon and rectum. (*Id*. at ¶ 82.) Symptoms usually develop over time rather than suddenly. (*Id*. at ¶ 82.) Symptoms may include diarrhea, often with blood or pus, abdominal pain and cramping, rectal pain or bleeding, urgency to defecate, weight loss, fatigue, or fever. (*Id*. at ¶ 83.) A diagnosis of ulcerative colitis may be confirmed through a blood test, stool sample, CT scan, or X-ray. (*Id*. at ¶ 87.)

According to Murphy, anti-inflammatory drugs, such as sulfasalazine, are often the first step in the treatment of inflammatory bowel disease. (*Id*. at ¶ 87-88.)

Murphy met with Messner on June 12, 2013, to discuss the biopsy results. (*Id*. at ¶ 89.) Messner continued to complain of pain and told Murphy that he was having diarrhea two to three times per day. (*Id*. at ¶ 90-91.) He also told Murphy that he was fatigued, had blurred vision and thirst, was not urinating frequently, had joint pain, and his legs and inguinal hernia hurt to push on. (*Id*. at ¶ 91.) Based on the exam Murphy assessed Messner with 1) polyps, and made a plan to have another colonoscopy in five years; 2) colitis, and made a plan to send him to the GI clinic; 3) abdominal pain, which Murphy noted was probably related to the colitis; 4) constitutional symptoms, and made a plan to check levels; and 5) joint pain, which Murphy determined was also possibly related to the colitis. (*Id*. at ¶ 93.)

The next day, June 13, 2013, Murphy requested that Messner be scheduled for an appointment with the University of Wisconsin GI clinic. (*Id*. at ¶ 94.) Murphy's request was approved and the appointment was scheduled for September 6, 2013. (*Id*. at ¶ 95.) Murphy states that HSU staff continued to address Messner's medical health complaints leading up to his appointment; however, Messner states that the nurses would not discuss his colitis with him and instructed him to discuss it with Murphy. (*Id*. at ¶ 96.) (Murphy does not specify *how* HSU staff addressed Messner's complaints

prior to his GI clinic appointment, and Messner does not identify which nurses refused to speak to him about his colitis.)

On September 6, 2013, Messner went to an appointment at the GI clinic. (*Id*. at ¶ 99.) The physician assistant at the clinic noted that Messner's colonoscopy showed that he had chronic active inflammation in the sigmoid colon, inflammation polyps and sessile serrated adenomatous polyps. (*Id*. at ¶ 100.) She made a plan to treat and manage Messner's inflammatory bowel disease, including starting the drug mesalamine (which was later switched to sulfasalazine, a similar drug, because of DOC preferences). That same day, after Messner returned to Oshkosh, nursing staff met with Messner and reviewed with him the clinic's recommendations. (*Id*. at ¶ 103.) Messner stated that he understood and his chart was flagged for review by Murphy. (*Id*. at ¶ 103.)

On September 19, 2013, Messner submitted another HSR complaining of a burning sensation in his stomach, back pain, and nausea. (*Id*. at ¶ 104.) Health services staff saw him the next day but he refused an assessment by nursing staff, stating, "there is no reason to see you. There's nothing you can do." (*Id*. at ¶ 105.) Messner explains that he refused the assessment by nursing staff because they refused to discuss his colitis and abdominal pain with him. (*Id.*) (Messner does not identify who in particular refused to discuss his colitis/abdominal pain with him.)

Nursing staff then contacted the GI clinic regarding medication concerns based on the symptoms described by Messner. (*Id*. at ¶ 105.) The next day the Digestive

Health Center responded by fax with medication recommendations. (*Id*. at ¶ 106.) The nursing staff flagged these recommendations for Murphy's review. (*Id*.) On September 20, 2016, based on the recommendations, Murphy prescribed Messner sulfasalazine and folic acid for his inflammatory bowel disease. (*Id*. at ¶ 107.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit

9

or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

As an initial matter the court dismisses Messner's negligence claim against Murphy and his Eighth Amendment claim against Lutz-Dahl. The defendants moved for summary judgment on these claims and Messner failed to address their arguments in his response to their motion. As the Court of Appeals for the Seventh Circuit has noted, "It is a well settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008). Because Messner failed to raise any argument in response to the defendants' request for summary judgment on these claims, the court deems the claims abandoned and dismisses them in their entirety. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003).

<u>Standard for Deliberate Indifference to Serious Medical Needs</u>

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (the medical need must be sufficiently

10
Case 2:14-cv-01272-WED   Filed 04/06/16   Page 10 of 17   Document 27

serious) and a subjective element (the officials must act with a sufficiently culpable state of mind). *Id.*

As noted by Murphy, ulcerative colitis is an inflammatory bowel disease that causes long-lasting inflammation and sores in a person's digestive tract. (ECF No. 26 ¶ 82-88.) *See* also http://www.mayoclinic.org/diseases-conditions/ulcerative-colitis/basics/definition/CON-20043763 (last visited April 5, 2016). Ulcerative colitis affects the innermost lining of a person's colon and rectum. *Id.* The condition can be debilitating and can sometimes lead to life-threatening complications. *Id.* While the condition has no known cure, treatment can greatly reduce signs and symptoms and even bring about long-term remission. *Id.*

In light of Murphy's eventual diagnosis that Messner suffered from ulcerative colitis and Murphy's failure to dispute that such a condition is objectively serious, the court finds that, for the purposes of summary judgment, Messner has satisfied the first prong of the standard described above (that his medical need was sufficiently serious). The court's analysis will therefore focus only on whether a genuine issue of material fact exists as to whether Murphy was deliberately indifferent to Messner's condition. In other words, the court will analyze whether evidence exists showing that Murphy knew of and disregarded an excessive risk to Messner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This is a high standard; medical malpractice is insufficient, as is a mere disagreement with a medical professional's medical judgment. See *Estelle v. Gamble*, 429

U.S. 97, 106 (1976); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*, 658 F.3d at 751 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

Here, Messner complains that Murphy's refusal to treat his condition until eleven months after he first complained to him resulted in prolonged, unnecessary pain, including abdominal pain, nausea, and eventually diarrhea multiples times a day. The Court of Appeals for the Seventh Circuit has repeatedly confirmed that a delay in treatment, even when it does not exacerbate injuries, can be a basis for an Eighth Amendment claim. See *Smith v. Knox County Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). "The length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Smith,* 666 F.3d at 1040 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

> Medical 'need' runs the gamut from a need for an immediate intervention to save the patient's life to the desire for medical treatment of trivial discomforts and cosmetic imperfections that most people ignore. At the top of the range a deliberate refusal to treat is an obvious violation of the Eighth Amendment, and at the bottom of the range a deliberate refusal to treat is obviously not a violation. Where to draw the line between the end points is a question of judgment that does not lend itself to mechanical

12
Case 2:14-cv-01272-WED   Filed 04/06/16   Page 12 of 17   Document 27

> resolution. It is a matter of determining the civilized minimum of public concern for the health of prisoners, which depends on the particular circumstances of the individual prisoner. Beyond this it is difficult to generalize, except to observe that the civilized minimum is a function both of objective need and cost. The lower the cost, the less need has to be shown, but the need must still be shown to be substantial.

*Ralston v. McGovern*, 167 F.3d 1160, 1161-62 (7th Cir. 1999) (internal citations omitted).

Murphy argues that Messner cannot satisfy the subjective element of the above standard for two reasons: 1) Murphy did not have actual knowledge of an excessive risk to Messner's health until April 16, 2013; and 2) Murphy was not deliberately indifferent to the risk once he knew about it.

Messner states that he told Murphy during his first appointment on October 12, 2012, that he had a history of colitis, and he points to the failure of pain medication to relieve his symptoms as evidence that Messner was aware of his condition. Murphy argues that he was not subjectively aware of a need related to inflammatory bowel disease until Messner's April 16, 2013 appointment. Murphy relies on *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004), *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998), and *Weaver v. Shadoan*, 340 F.3d 398 (6th Cir. 2003), to support his argument.

In *Riccardo* and *Weaver* the appellate courts upheld lower court decisions granting summary judgment in favor of the defendants after finding that the defendants did not subjectively know of or believe that there was a serious risk to the plaintiffs. However, in both of those cases the plaintiffs denied the existence of an

objectively serious threat before seeking help from the defendants. As a result, the courts found that the defendants could not have had the subjective belief that the plaintiffs were in substantial risk of serious harm. In contrast to those cases, Messner says that he personally informed Murphy that he had a history of colitis, and when the pain medications prescribed by Murphy failed to alleviate his abdominal pain, he renewed his requests for treatment.

In *Johnson*, the appellate court upheld summary judgment in favor of the defendant because the results of the objective examinations that the doctor performed did not support the inmate's subjective complaints. 145 F.3d at 166. The appellate court explained that, because the doctor believed the inmate was malingering, he lacked subjective knowledge of the inmate's medical need. *Id*. at 169. The doctor in *Johnson* examined the inmate on multiple occasions and drew conclusions about his condition based on first-hand experience and observations. Murphy examined Messner once in October 2012 and then not again until April 2013 despite repeated complaints from Messner that he was in pain and nauseous and that Murphy's prescribed medication (acetaminophen) was not working. *Johnson* does not stand for the proposition that a defendant doctor can disregard a patient's requests for help, persist in ineffective treatment, and then defend his inaction with the explanation that he did not know anything was wrong. While "neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference," a doctor's

14

decision to persist in "an easier and less efficacious treatment" (bumping/cancelling Messner's appointments and failing to change ineffective medication) can violate the Eighth Amendment. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citations omitted).

Based on Messner's consistent complaints of abdominal pain and nausea, his testimony that he informed Murphy of his history of colitis, and the failure of the prescribed medication to alleviate Messner's pain, the court concludes that a genuine dispute of material fact exists about whether and when Murphy was aware that Messner suffered from a serious medical condition.

Murphy also argues that, once he was aware of the risk to Messner's health (that is, after Messner's April 2013 appointment), he adequately treated Messner by arranging diagnostic examinations and referring Messner to a specialist. The court has already determined that a question of fact exists as to whether and when Murphy knew that an excessive risk to Messner's health existed. Assuming, as the court must at this stage, that Murphy was aware that Messner had a serious medical condition, his decision not to examine Messner for six months and his decision not to change Messner's medication despite his complaints that it was ineffective in alleviating his pain may by themselves constitute deliberate indifference. See *Gonzalez v. Feinerman*, 663 F.3d 311, 314-15 (7th Cir. 2011) (holding that the plaintiff's "physicians were obligated not to persist in ineffective treatment" and that "[d]elay in treating a

15

condition that is painful even if not life-threatening may well constitute deliberate indifference . . . .").

However, even if Murphy had established that he did not know of an excessive risk to Messner until his April 2013 examination, a genuine dispute of material fact exists about whether Murphy's decision to not prescribe any medication to treat Messner's symptoms demonstrated deliberate indifference to Messner's serious medical needs. Murphy was informed in late May 2013 that Messner suffered from colitis, yet even after Messner continued to complain of pain, nausea, and diarrhea multiple times a day Murphy waited until September 2013 to prescribe any medication to treat Messner's symptoms. Murphy stated in his declaration that treatment for colitis "usually involves either drug therapy or surgery" and that "[a]nti-inflammatory drugs are often the first step in the treatment of inflammatory bowel disease." (ECF No. 20 ¶ 46-47.) He goes on to state, "Sulfasalazine can be effective in reducing symptoms of ulcerative colitis." (Id. at ¶ 47.) Murphy did eventually prescribe sulfasalazine, but not until September 20, 2013, nearly four months after he learned of the results from the colonoscopy revealing active colitis.

While minor delays in treatment will not constitute deliberate indifference, Messner was forced to endure months of discomfort, nausea, and diarrhea, despite there being a seemingly straightforward and simple treatment—prescription of a medication known to Murphy. Consequently, the court concludes that a genuine

dispute of material fact exists as to whether Murphy was deliberately indifferent to Messner's serious medical needs.

Finally, Murphy is not entitled to qualified immunity. "The purpose of the doctrine of qualified immunity is to shield public officers from liability 'consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it.'" *Walker v. Benjamin*, 293 F.3d 1030, 1040-41 (7th Cir. 2002) (quoting *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)). The general standard for liability under the Eighth Amendment for refusing and/or delaying treatment for a serious medical condition was well established at the time of these events.

## IV. CONCLUSION

**WHEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 17) is **GRANTED** as to the plaintiff's negligence claim against Murphy and as to his Eighth Amendment claim against Lutz-Daul; but **DENIED** as to plaintiff's Eighth Amendment claim against Murphy.

Dated at Milwaukee, Wisconsin this 6th day of April, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge